# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

WHITNEY PAYTON,

Plaintiff,

v. Civil Action No. _____

**26-C-1358**

OCTAPHARMA PLASMA, INC.,

Defendant.

# COMPLAINT

## I. INTRODUCTION

**1.** Plaintiff Whitney Payton brings this action against Defendant Octapharma Plasma, Inc. for disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA").

**2.** Plaintiff was hired by Defendant as a Physician Substitute with the expectation that she would receive the structured training necessary to safely and competently perform the responsibilities of that position.

**3.** Plaintiff alleges that, despite her repeated efforts to complete her training and perform the duties of her position, her training was frequently interrupted by operational staffing needs and she was later expected to perform responsibilities she believed exceeded the training she had received.

**4.** Beginning in June 2025, after Defendant began expecting Plaintiff to perform Physician Substitute responsibilities that she believed exceeded the training she had received, Plaintiff repeatedly communicated concerns regarding incomplete training, donor safety, and those responsibilities. Plaintiff consistently explained that her concerns were not based on an unwillingness to work, but on her desire to safely, ethically, and

competently perform the position for which she had been hired.

5. Plaintiff further alleges that after raising concerns regarding her training, donor safety, and assigned responsibilities, the nature of her employment changed significantly. According to Plaintiff, communication deteriorated, training did not meaningfully resume, she became the subject of an internal Human Resources investigation, and despite repeatedly attempting to resolve her concerns through Defendant's internal processes, those concerns remained unresolved. As these events continued, Plaintiff later communicated disability-related concerns regarding the effect they were having on her mental health.

6. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging disability discrimination and retaliation, received a Notice of Right to Sue, and now brings this action seeking all relief available under applicable law.

# II. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

8. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging disability discrimination and retaliation and subsequently received a Notice of Right to Sue before commencing this action.

9. Venue is proper in the United States District Court for the Eastern District of Wisconsin because the events giving rise to this action occurred within this judicial district and Defendant conducted business within this district during the relevant time period.

# III. PARTIES

10. Plaintiff Whitney Payton is an adult resident of the State of Wisconsin.

11. At all times relevant to this Complaint, Plaintiff was employed by Defendant Octapharma Plasma, Inc. as a

Physician Substitute/Donor Technician.

**12.** Defendant Octapharma Plasma, Inc. is a corporation doing business in the State of Wisconsin and was Plaintiff's employer during the events described in this Complaint.

---

# IV. FACTUAL BACKGROUND

## A. Employment Background

**13.** In approximately March 2025, Plaintiff was hired by Defendant as a Physician Substitute. Plaintiff accepted the position with the understanding that she would receive structured training before independently performing the full responsibilities of that role.

**14.** Plaintiff accepted the position because she wanted to build a career in the role and expected that her training would progress in a structured manner until she became fully qualified to independently perform Physician Substitute duties.

**15.** Instead, Plaintiff alleges that her training was frequently interrupted by operational staffing needs. Rather than consistently training as a Physician Substitute, Plaintiff spent the majority of her employment performing Donor Technician duties in order to help meet the center's staffing demands. As a result, her Physician Substitute training was repeatedly delayed, interrupted, or conducted inconsistently.

**16.** Although the staffing shortages were outside of Plaintiff's control, Plaintiff consistently attempted to assist with the center's operational needs. Plaintiff continued reporting to work, performed the duties assigned to her, and frequently agreed to work additional shifts when requested because of staffing shortages, while continuing to request the structured training necessary to safely and competently perform the Physician Substitute position for which she had been hired.

**17.** Plaintiff's employee performance metrics reflect that she performed substantially more Donor Technician responsibilities than Physician Substitute responsibilities during her employment. Plaintiff alleges those metrics are consistent with her understanding that she spent the majority of her employment meeting operational staffing needs rather than receiving continuous Physician Substitute training.

**18.** Plaintiff's concerns were never based on an unwillingness to work or perform the responsibilities of her position. Rather, Plaintiff consistently communicated that she wanted the training necessary to safely, ethically, and competently perform the Physician Substitute position for which she had been hired.

## B. June 18, 2025 – Partial Physician Substitute Sign-Off

**19.** On June 18, 2025, Plaintiff met with the center physician regarding a partial Physician Substitute sign-off.

**20.** Plaintiff understood that the partial sign-off authorized her to perform only limited Physician Substitute responsibilities while continuing to receive additional structured training before independently performing the full responsibilities of the position.

**21.** Plaintiff accepted the partial sign-off based on that understanding and believed her Physician Substitute training would continue before she was expected to independently open or operate the plasma center.

**22.** Plaintiff alleges that this understanding was consistent with the discussions that occurred during the sign-off process and formed the basis for her decision to accept the partial sign-off.

**23.** Plaintiff later learned that management's expectations regarding the scope of the partial sign-off differed from her understanding. Plaintiff alleges that this difference became the foundation of the events that followed.

## C. June 19, 2025 – Plaintiff Raises Concerns Regarding Training

**24.** On June 19, 2025, the day after receiving the partial Physician Substitute sign-off, Plaintiff met with Center Director Matthew Jeong to discuss concerns regarding the responsibilities she believed she was being expected to perform.

**25.** Plaintiff explained that she did not believe she had yet received sufficient structured training to independently perform all Physician Substitute responsibilities and expressed concern that doing so could affect donor safety and her professional responsibilities.

**26.** Plaintiff further explained that she wanted to continue her training and become fully qualified for the Physician Substitute position. Plaintiff communicated that her concerns were not based on an unwillingness to perform her

job, but on her desire to receive the training necessary to safely and competently perform the responsibilities she believed the position required.

**27.** During that conversation, Plaintiff informed management that had she understood the partial sign-off to authorize the responsibilities later expected of her, she would not have agreed to the partial sign-off on June 18, 2025.

**28.** Later that same day, Plaintiff discussed these concerns with another Physician Substitute. During that conversation, Plaintiff again expressed confusion regarding the scope of her responsibilities and reiterated her understanding that additional training was necessary before independently assuming certain Physician Substitute duties.

**29.** Plaintiff alleges that these conversations occurred approximately three weeks before the Human Resources investigation initiated on July 8, 2025.

## D. June 21, 2025 – Plaintiff Is Expected to Open the Donor Center Alone

**30.** On June 21, 2025, Plaintiff reported to work expecting to continue her Physician Substitute training consistent with the discussions that had occurred following her June 18, 2025 partial Physician Substitute sign-off and the training that continued on June 19, 2025.

**31.** Upon arriving at work, Plaintiff was informed for the first time that she was expected to independently open the donor center as the Physician Substitute that day.

**32.** Plaintiff alleges that she had not been notified before reporting to work that she would be expected to independently open the donor center. Plaintiff further alleges that this expectation was inconsistent with her understanding of the June 18 partial sign-off and the additional training conversation she had on June 19.

**33.** Plaintiff immediately communicated her concerns and explained that she did not believe she had received the structured training necessary to independently open the donor center. Plaintiff expressed concern for donor safety and her professional responsibilities.

**34.** Plaintiff alleges that another member of management informed her that Center Director Matthew Jeong had directed that Plaintiff open the donor center despite her concerns and that refusing to do so would be considered insubordination.

**35.** Plaintiff reiterated that she wanted to complete her Physician Substitute training and safely perform the

position for which she had been hired. Plaintiff alleges that she was requesting additional training and clarification not refusing to perform her job.

**36.** Plaintiff further communicated that requiring her to independently open the donor center without the training she believed was necessary placed both her and plasma donors in an unnecessarily difficult position.

**37.** Plaintiff alleges that, rather than treating her statements as requests for additional training and clarification, Defendant later characterized her actions as a refusal to perform assigned duties. Plaintiff disputes that characterization and alleges that her concerns consistently centered on incomplete training, conflicting expectations regarding the scope of her responsibilities, and her desire to safely and competently perform the Physician Substitute position.

# E. June 21 – July 8, 2025 – Events Following June 21

**38.** Following the events of June 21, 2025, Plaintiff remained employed by Defendant and continued reporting to work while attempting to perform the duties assigned to her.

**39.** Plaintiff alleges that after June 21, communication from management changed significantly. Plaintiff contends that communication regarding her Physician Substitute training substantially decreased and that she received little to no meaningful guidance regarding how or when her remaining training would be completed.

**40.** Plaintiff further alleges that despite repeatedly communicating concerns regarding her training and responsibilities, those concerns remained unresolved.

**41.** Plaintiff continued performing the work assigned to her while attempting to navigate conflicting expectations regarding her role, training, and responsibilities.

**42.** Plaintiff alleges that these events ultimately led to Defendant initiating a Human Resources investigation on July 8, 2025.

# F. July 8, 2025 – Human Resources Investigation

**43.** On July 8, 2025, Plaintiff participated in a Human Resources interview concerning the events surrounding June 21, 2025.

**44.** During the interview, Plaintiff explained her understanding of the June 18 partial Physician Substitute sign-off, the additional training that occurred on June 19, 2025, and the events of June 21, 2025.

**45.** Plaintiff explained that her concerns centered on incomplete training, donor safety, and responsibilities she believed exceeded the training she had received. Plaintiff reiterated that she wanted to complete her Physician Substitute training and safely perform the position for which she had been hired.

**46.** Plaintiff fully cooperated with Defendant's investigation, answered questions regarding the events at issue, and provided information requested by Human Resources.

**47.** Following the interview, Plaintiff continued communicating with Human Resources and management in an effort to resolve her concerns through Defendant's internal processes rather than immediately resigning.

# G. July 17, 2025 – Plaintiff Requests Administrative Leave

**48.** As the investigation remained pending, Plaintiff continued experiencing significant stress and anxiety related to the unresolved workplace issues and the uncertainty surrounding Defendant's investigation.

**49.** On July 17, 2025, Plaintiff formally requested administrative leave or paid suspension while the investigation remained pending. Plaintiff made that request based on her understanding of Defendant's investigation policy, which she believed permitted administrative leave during a pending workplace investigation.

**50.** Plaintiff explained that she believed continuing to report to work while the investigation remained unresolved

would negatively affect her mental and emotional well-being.

**51.** Plaintiff further explained that she believed requiring her to continue reporting to work while the investigation was pending created a conflict because the issues under investigation involved members of management responsible for supervising her.

**52.** Plaintiff requested temporary leave while Defendant completed its investigation and communicated that she was attempting to respect the investigative process while also protecting her mental health.

**53.** Plaintiff continued expressing her willingness to cooperate with Defendant's investigation and requested guidance regarding the next steps in the process.

# H. July 28, 2025 – Defendant Places Plaintiff on Paid Suspension

**54.** On July 28, 2025, Plaintiff participated in a telephone conversation with Defendant's Human Resources representatives and District Manager concerning the ongoing investigation.

**55.** Following that conversation, Defendant placed Plaintiff on paid suspension while it continued investigating alleged policy violations.

**56.** Defendant informed Plaintiff that the investigation would be completed as quickly and thoroughly as possible and that Plaintiff would receive further direction once a decision had been made.

**57.** Plaintiff complied with Defendant's instructions, remained available during her scheduled working hours, and timely submitted the written statement and documentation requested by Human Resources.

**58.** Plaintiff understood the paid suspension to allow Defendant to complete its investigation, review the information she had submitted, and determine her employment status and any appropriate next steps.

## I. July 29–30, 2025 – Plaintiff Returns Following Paid Suspension

59. After submitting the written statement, timeline, and supporting documentation requested by Human Resources, Plaintiff remained available during both her scheduled and unscheduled working hours while awaiting further direction regarding the investigation.

60. On July 29, 2025, Defendant notified Plaintiff that she was expected to return to work on July 30, 2025, and represented that her Physician Substitute training would resume. In response, Plaintiff communicated in writing that she remained concerned because the investigation had not been resolved, her training remained incomplete, and she had not been provided clear expectations regarding her role or return to work.

61. On the morning of July 30, 2025, Defendant again directed Plaintiff to report to work, informed her that she was no longer on paid suspension, and advised that any remaining concerns regarding her training and employment would continue to be addressed after her return. Plaintiff complied with Defendant's instructions and reported to work as directed. This sequence is consistent with the contemporaneous communications and the return-to-work call.

62. Upon arriving at the center, Plaintiff was directed to wait in a conference room while management attempted to obtain clarification regarding her work status and instructions from Human Resources.

63. Plaintiff remained in the conference room for an extended period while management sought guidance regarding whether Plaintiff should remain at work or leave for the day.

64. Plaintiff was ultimately informed that she could leave the workplace for the remainder of the day. Plaintiff expressed concern that leaving without clear direction could later be characterized as insubordination or job abandonment because she had reported to work as instructed.

65. Plaintiff left the workplace only after management informed her that she could do so and continued awaiting further direction from Human Resources.

# J. July 30, 2025 – Plaintiff Reports Additional Workplace Concerns

**66.** Before leaving the workplace on July 30, 2025, Plaintiff experienced an interaction with a coworker that Plaintiff believed reflected that rumors regarding her employment status had begun circulating despite the ongoing Human Resources investigation.

**67.** Plaintiff immediately reported the incident to management and expressed concern that the confidentiality of the investigation had been compromised.

**68.** Plaintiff further expressed concern that rumors regarding her employment status were inconsistent with Defendant's representation that the investigation was confidential.

**69.** Management acknowledged Plaintiff's concerns and advised Plaintiff that the matter would be communicated to Human Resources.

# K. August 1, 2025 – Transfer to the West Milwaukee Donor Center

**70.** On August 1, 2025, Human Resources instructed Plaintiff to report to Defendant's West Milwaukee Donor Center to continue her Physician Substitute training.

**71.** Human Resources advised Plaintiff that management at the West Milwaukee center would review Plaintiff's training plan and establish expectations regarding her continued training.

**72.** Plaintiff confirmed that she would report as directed and continued cooperating with Defendant's efforts to complete her training.

**73.** Plaintiff also advised Human Resources that she remained concerned about unresolved issues involving her training, reporting structure, and workplace conditions. Plaintiff requested that expectations regarding her training and responsibilities be communicated in writing.

# L. August 4, 2025 – Plaintiff's Resignation

74. On August 4, 2025, Plaintiff submitted her resignation from Defendant's employment, effective immediately.

75. Before resigning, Plaintiff had repeatedly communicated concerns regarding her training, assigned responsibilities, workplace conditions, the pending Human Resources investigation, and the effect those events were having on her mental health.

76. Plaintiff also repeatedly sought clarification regarding her role, requested additional training, requested administrative leave while the investigation was pending, complied with Defendant's investigative requests, and continued attempting to resolve her concerns through Defendant's internal processes.

77. Despite those efforts, Plaintiff alleges that her concerns remained unresolved. Plaintiff further alleges that by the time of her resignation, she no longer believed that Defendant would adequately address the issues she had repeatedly raised.

78. Plaintiff resigned after concluding that she could no longer continue working under the circumstances as they then existed.

# M. Plaintiff's Efforts to Resolve Her Concerns Internally

79. Throughout her employment, Plaintiff made repeated efforts to resolve her concerns through Defendant's internal reporting procedures and Human Resources before ultimately resigning.

80. Plaintiff communicated concerns regarding her training, assigned responsibilities, donor safety, workplace conditions, and the pending investigation to supervisors, Human Resources representatives, and other members of management.

81. Plaintiff submitted contemporaneous written communications documenting her concerns, requested clarification regarding Defendant's expectations, sought additional training, requested administrative leave while the investigation remained pending, and timely submitted the written statement, timeline, and supporting

documentation requested during Defendant's investigation.

82. Plaintiff also requested documentation regarding the investigation, sought clarification regarding her reporting structure and training responsibilities, requested that expectations be communicated in writing, and attempted to create an accurate contemporaneous record of events throughout the investigation.

83. Plaintiff alleges that despite these repeated efforts, the concerns she consistently raised remained unresolved at the time of her resignation.

# V. CAUSES OF ACTION

## COUNT I

### Disability Discrimination

*(Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.)*

84. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 83 of this Complaint as though fully set forth herein.

85. At all times relevant to this action, Plaintiff was a qualified individual within the meaning of the Americans with Disabilities Act.

86. Defendant was aware of Plaintiff's disability-related concerns and Plaintiff's communications regarding the effect the ongoing workplace events and investigation were having on her mental health.

87. Plaintiff alleges that after Defendant became aware of those disability-related concerns, Defendant subjected her to adverse treatment as described throughout this Complaint.

88. Plaintiff alleges that Defendant's actions constituted discrimination on the basis of disability in violation of the Americans with Disabilities Act.

89. As a direct and proximate result of Defendant's conduct, Plaintiff suffered lost wages, emotional distress, and other damages recoverable under applicable law.

# COUNT II

## Retaliation

*(Americans with Disabilities Act, 42 U.S.C. § 12203)*

**90.** Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 89 of this Complaint as though fully set forth herein.

**91.** Plaintiff engaged in activity protected by the Americans with Disabilities Act by communicating disability-related concerns, requesting administrative leave while the investigation was pending, and seeking assistance through Defendant's Human Resources process.

**92.** Plaintiff alleges that after engaging in those protected activities, Defendant subjected her to adverse actions as described throughout this Complaint.

**93.** Plaintiff alleges that Defendant's actions were motivated, at least in part, by Plaintiff's protected activity.

**94.** Defendant's conduct violated the anti-retaliation provisions of the Americans with Disabilities Act.

**95.** As a direct and proximate result of Defendant's conduct, Plaintiff suffered lost wages, emotional distress, and other damages recoverable under applicable law.

# VI. REQUEST FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and grant the following relief:**

**A.** Declare that Defendant violated the Americans with Disabilities Act.

**B.** Award Plaintiff back pay, front pay where appropriate, lost employment benefits, and other economic damages permitted by law.

**C.** Award Plaintiff compensatory damages as permitted by law.

**D.** Award punitive damages to the extent authorized by law and supported by the evidence.

**E.** Award Plaintiff the costs of this action and any other relief the Court deems just and proper.

# VII. JURY DEMAND

**96.** Plaintiff demands a trial by jury on all issues so triable.

---

Respectfully submitted,

**Whitney Payton**

Plaintiff, Pro Se